**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

TAMARA M. S.,

     Plaintiff,

v.                                                  Civ. No. 24-1184 GBW

FRANK BISIGNANO,
*Commissioner of the Social Security
Administration*,

     Defendant.

<u>**ORDER DENYING REMAND**</u>

This matter comes before the Court on Plaintiff's Motion to Remand the Social

Security Agency ("SSA") decision to deny Plaintiff Social Security Disability Insurance

benefits ("SSDI") and Supplemental Security Income ("SSI"). *Doc. 16*. For the reasons

explained below, the Court DENIES Plaintiff's motion and AFFIRMS the judgment of

the SSA.

## I.    PROCEDURAL HISTORY

Plaintiff filed an initial application for SSDI and SSI on June 1, 2020, alleging

disability beginning February 1, 2017. Administrative Record ("AR") at 118, 270-77.

Plaintiff's application was denied on initial review on September 7, 2021, and again on

reconsideration on April 25, 2023. AR at 139-73. On December 6, 2023, a hearing was

held by an Administrative Law Judge ("ALJ"). AR at 20-48. Prior to the hearing,

Plaintiff amended the alleged onset date to June 1, 2020.  AR at 305.  With this new onset date, the ALJ found that Plaintiff was ineligible for SSDI and only evaluated Plaintiff's claim for SSI.  AR at 118.  The ALJ issued an unfavorable decision on February 12, 2024.  AR at 118-31.  The Appeals Council denied review on September 18, 2024, AR at 1, making the February 2024 decision the final decision of the Commissioner for purposes of judicial review.  *See* 20 C.F.R. § 404.981.  Plaintiff then filed the present action on November 21, 2024.  *Doc. 1.*

## II.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991).  "In reviewing the ALJ's decision, [the Court] neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency."  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted).

"Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Casias*, 933 F.3d at 800 (internal quotation marks omitted).  "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to

discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).

"[I]n addition to discussing the evidence supporting his decision, the ALJ also must

discuss the uncontroverted evidence he chooses not to rely upon, as well as

significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing

two inconsistent conclusions from the evidence does not prevent [the] findings from

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007).

### III.    ALJ EVALUATION

#### A.  Legal Standard

For purposes of both Social Security Disability Insurance benefits and

Supplemental Security Income, an individual is disabled when he or she is unable "to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has

lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these

criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520.[1] If the

---

[1] Plaintiff initially applied for both SSDI and SSI. The five-step test for determining disability is the same for both types of benefits, although the test is codified in two separate sections of the Code of Federal Regulations. 20 C.F.R § 404.1520 governs SSDI; § 416.920 governs SSI.

Commissioner finds an individual disabled at any step, the next step is not taken. *Id*. §

404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he

is not engaged in "substantial gainful activity"; (2) he has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and that either (3) his impairments meet or equal

one of the "Listings" of presumptively disabling impairments; or (4) he is unable to

perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d

1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017,

1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional

capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R.

§ 404.1545(a)(3). A claimant's RFC is "the most [he or she] can still do despite [physical

and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical

and mental demands of the claimant's past work. "To make the necessary findings, the

ALJ must obtain adequate 'factual information about those work demands which have

a bearing on the medically established limitations.'" *Winfrey*, 92 F.3d at 1024 (quoting

Social Security Ruling (SSR) 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ

4

determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**B.  The ALJ's Decision**

On February 12, 2024, the ALJ issued a decision denying Plaintiff's application for SSI benefits. *See* AR at 118-31. In denying Plaintiff's application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 1, 2020, the amended alleged onset date. AR at 121.

At step two, the ALJ found Plaintiff had the following severe impairments: type II diabetes mellitus, diabetic neuropathy, degenerative disc disease of the lumbar spine, hypertension, hypothyroidism, obesity, displaced segmental fracture of shaft of humerus of the right arm, anxiety disorder, unspecified depressive disorder, and posttraumatic stress disorder (PTSD). *Id*.

At step three, the ALJ found that Plaintiff's severe impairments—both

individually and in combination—did not meet or equal the severity of an impairment in the Listings.  AR at 121-22.  He determined that Plaintiff had moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself; but these limitations did not satisfy the Paragraph B criteria for a finding of disability under Listings 12.00.  AR at 122-23.

> At step four, the ALJ found Plaintiff had the RFC
>
> to perform sedentary work as defined in 20 CFR 416.967(a) except she requires a sit/stand option allowing for every 30 minutes of sitting work, she has the ability to stand for 5 minutes while remaining on task; she can frequently finger and feel; she cannot use foot controls; she must avoid concentrated exposure to vibrations; she must avoid all exposure to workplace hazards such as moving parts and unprotected heights; and she can frequently reach in any direction. In addition, the claimant can understand, remember, and carry out detailed but not complex instructions; can have frequently [*sic*] interaction with coworkers and supervisors; can have occasional interaction with the public; and can deal with frequent changes in a routine work setting.

AR at 123.  In making this finding he concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  AR at 125. However, Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  *Id*.  He found persuasive the opinions of consultative examiner Rod Merta, PhD.[2]  AR at 128.  He found the medical opinions of Dorothy Leong, MD;

---

[2] [2] The ALJ referred to Dr. Merta as "Rod Mertak, PhD."  AR at 128.  Record evidence refers to him as Rod

Helen Malabed, MD; Richard Sorensen, PhD; and Victor Salgado, MD unpersuasive due to inconsistencies with evidence in the record and due to the fact that several of the doctors examined Plaintiff before her motor vehicle accident that led to the fracture of her right arm, one of Plaintiff's severe impairments.  AR at 127-28.

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that she could perform jobs that exist in significant numbers in the national economy.  AR at 129-30.  Specifically, the ALJ found that Plaintiff could perform the requirements of three representative occupations: (1) Document preparer (DOT 249.587-018); (2) Addresser (DOT 209.587-010); and (3) Table worker, sorter (DOT 739.687-182).  AR at 130.  Accordingly, the ALJ determined that Plaintiff was not disabled from February 1, 2017, through the date of the decision.  AR at 130-31.

## IV.   PARTIES' POSITIONS

Plaintiff asserts that the ALJ erred by (1) failing to evaluate or "provide any indication that he was even aware of" the Section I checkbox findings provided by Dr. Richard Sorenson and (2) failing to "articulate a reasoned, evidence-supported rationale for rejecting the potentially disabling opinions of…Dr. Rod J. Merta."  *Doc. 16* at 7, 11.

Defendant responds that the ALJ's decision should be affirmed, because (1) a consultant's Section I findings are general findings as to limitation, not conclusions

---

G. Merta, AR at 61, or Rod J. Merta, AR at 1185.  Rod J. Merta appears to be the correct spelling of his name.

7

about what workplace restrictions are justified, and as such do not constitute separate restrictions from those outlined in the doctor's narrative conclusion; (2) even if Section I findings were considered part of an opinion, ALJs do not need to separately assess every part of a medical opinion to find the opinion as a whole unpersuasive; (3) the ALJ did actually adopt workplace restrictions addressing all four functional areas where Dr. Sorensen found limitations; and (4) regarding Dr. Merta's opinion, the ALJ reasonably interpreted the opinion, found it persuasive, and fashioned an RFC that accounted for the opinion. *Doc. 20* at 5-13.

Overall, Defendant argues that the ALJ's decision should be affirmed because the RFC was supported by substantial evidence and Plaintiff is impermissibly asking the Court to reweigh evidence. *Id*. at 13.

## V.   ANALYSIS

### A.  <u>The Opinion of Dr. Richard Sorensen</u>

Plaintiff argues that remand is warranted because the ALJ failed to discuss or indicate that he was aware of the Section I checkbox opinions provided by Dr. Richard Sorensen in his Mental Residual Functional Capacity Assessment ("MRFCA"). *Doc. 16* at 7; *see* AR at 59-61.

Agency-contracted reviewing psychologists, like Dr. Sorensen, typically use MRFCA forms to assess a claimant's mental RFC. *See Young v. Berryhill,* 2018 WL

8

840022, at *14 n.11 (D.N.M. Feb. 13, 2018); Program Operations Manual System ("POMS") DI § 24510.060(A)(1).  Two sections of the MRFCA form are relevant here: Section I and Section III.

Section I requires a consultant to "record preliminary conclusions about the effect of [a claimant's impairments] on each of four general areas of mental function." POMS § DI 254510.061(A).  If a consultant finds that a claimant is moderately limited in any area, "[t]he degree and extent of the capacity or limitation must be described in narrative format in Section III."  POMS § DI 24510.063(B)(2).  Section III "is for recording the formal narrative mental RFC assessment and provides for [the consultant] to prepare a narrative statement for each of" those four areas of mental function.  POMS § DI 24510.065(A).  In short, Section I provides a "worksheet to ensure that [a consultant] has considered each…pertinent mental activit[y] and the claimant's…degree of limitation," POMS § DI 25020.010(B)(1), while Section III is used by medical consultants to record their "formal mental RFC assessment" and is assessed by adjudicators as such, *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015).

In the Section I "worksheet" portion of his MRFCA, Dr. Sorensen found that Plaintiff was moderately limited in numerous areas of mental functioning, including:

- Understanding and remembering detailed instructions;

- Carrying out detailed instructions;

- Maintaining attention and concentration for extended periods;

- Working in coordination with or in proximity to others without being distracted by them;

- Completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods;

- Interacting appropriately with the general public;

- Accepting instructions and responding appropriately to criticism from supervisors;

- Getting along with coworkers or peers without distracting them or exhibiting behavioral extremes;

- Responding appropriately to changes in the work setting; and

- Setting realistic goals or making plans independently of others

AR at 59-60. Dr. Sorensen did not provide a substantive explanation in the narrative portion of each section, *see id.*, and instead expanded on his findings in the "MRFC Additional Explanation" portion of the form. AR at 60-61. At the end of his narrative, Dr. Sorensen opined that "[a]n RFC of Unskilled would be appropriate at this time." AR at 61. While detailed, Dr. Sorensen's narrative arguably did not account for all of

the moderate limitations noted in Section I.[3]  *See id.*

Plaintiff cites the Tenth Circuit's holding that "if a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence *supporting* an ALJ's RFC finding."  *Carver*, 600 F. App'x at 619 (emphasis added).  Further, an ALJ "should [not] turn a blind eye to any moderate limitations enumerated in Section I that are not adequately explained in Section III."  *Lee v. Colvin*, 631 F. App'x 538, 541 (10th Cir. 2015).  Plaintiff asserts that the ALJ erred by rejecting the Section III narrative opinion that Plaintiff could perform unskilled work and finding the opinion unpersuasive "without even mentioning the multitude of Section I checkbox limitations which were suggestive of significant social limitations."  *Doc. 16* at 9; *see* AR at 127.  Plaintiff argues that remand is warranted because the ALJ effectively "turned a blind eye" to the Section I checkbox limitations.  *Doc. 16* at 10.

The Court finds Plaintiff's argument unavailing.  It is certainly true that an ALJ could commit reversable error by accepting part of an MRFCA while not discussing

---

[3] Dr. Sorensen opined that Plaintiff should be limited to "unskilled work."  AR at 61.  "Unskilled work generally requires only the following: (1) '[u]nderstanding, remembering, and carrying out simple instructions'; (2) '[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions'; (3) '[r]esponding appropriately to supervision, co-workers and usual work situations'; and (4) '[d]ealing with changes in a routine work setting.'" *Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) (quoting SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)).  This limitation accounts for most, but not necessarily all of the Section I moderate findings.  *See* AR at 59-60.

contradictions between Section I and Section III. *See, e.g., Martinez v. Kijakazi*, 2023 WL

2662329, at *5 (D.N.M. Mar. 28, 2023) (finding remand was warranted when an ALJ

failed to incorporate or explain why he rejected Section I findings of moderate

limitation despite finding the consultants' opinions persuasive). However, in the case

at hand, the ALJ found Dr. Sorensen's opinion *unpersuasive*. AR at 127. As such, it

would be illogical to require him to provide a more detailed discussion as to each

portion of an opinion he ultimately found unpersuasive. The appropriate question,

rather, is whether the ALJ reasonably determined and articulated the persuasiveness of

Dr. Sorensen's opinion using the factors outlined in the regulations. *See* 20 C.F.R. §

404.1520c(a), (c). The most important factors to consider when evaluating the

persuasiveness of medical opinions are (1) supportability and (2) consistency. *Id.* §

404.1520c(c).

> The ALJ stated that he found Dr. Sorensen's opinion unpersuasive because:
>
> While the evidence does show the claimant is capable of unskilled work,
> the evidence also shows the claimant has social limitations not opined by
> Dr. Sorensen. Moreover, findings of the consultative examination
> revealed no evidence of a cognitive impairment and satisfactory attention,
> recall, and calculation.

AR at 127. The Court finds that the ALJ applied the correct legal standard in his

articulation. First, the ALJ addressed supportability when he noted gaps in the

evaluation regarding Plaintiff's social limitations. *Id.* Second, the ALJ addressed

consistency when he rejected the finding that Plaintiff should be limited to "unskilled work," *see* AR at 61, because she showed no evidence of cognitive impairment and had satisfactory attention, recall, and calculation.  AR at 127, 1183 ("Claimant's MMSE Total score of 30 out of 30 suggests no cognitive impairment[.]").  The ALJ did not have to assess every part of the medical opinion to find it unpersuasive as the regulation only requires a "source-level articulation."  20 C.F.R. § 404.1520c(b)(1).

While the ALJ could have been more specific in his discussion of the medical evidence, his decision meets the Tenth Circuit's minimum articulation requirement, and the Court can sufficiently follow the ALJ's reasoning.  *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("Where…we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.").  The Court therefore finds that the ALJ applied the correct legal standards in analyzing Dr. Sorensen's medical opinion, and his decision was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Casias*, 933 F.2d at 800, and should be affirmed.

B.  **The Opinion of Dr. Rod Merta**

Plaintiff's second argument for reversal is that the ALJ failed to "articulate a

reasoned, evidence-supported rationale for rejecting the potentially disabling opinions

of…Dr. Rod J. Merta."  *Doc. 16* at 11.  Dr. Merta conducted a consultative examination

of Plaintiff on May 12, 2021, and provided the following functional assessment:

> Claimant can reason, and she is capable of understanding verbal and
> written instructions, but at times her physical pain and/or depression may
> interfere with her overall cognitive functioning at a level between
> "Moderate—some limitations, to Marked—significant limitations."  When
> not so impeded, she is capable of sustaining concentration on many if not
> all the cognitive functions contained with her ADLS, hobbies and work-
> related tasks, and she can pace herself and persist until completion.  As for
> social interaction, when Claimant is experiencing physical pain and/or
> depression, she is likely to isolate herself, and at such times, Claimant's
> normal social interaction may be impaired at a level of "Moderate—some
> limitations."

AR at 1185.  The ALJ found Dr. Merta's opinion supported, persuasive, and consistent

with other evidence in the record.  AR at 128.

Plaintiff argues that Plaintiff's RFC is not reflective of the necessary limitations

found in Dr. Merta's opinion such as time off task or periods of social isolation.  *Doc. 16*

at 13; *see also doc. 25* at 5.  Plaintiff contends that remand is necessary so that the ALJ can

"either adopt some time off task or absence from work or provide a thorough, evidence-

based rationale as to why these aspects of Dr. Merta's opinion were unworthy of

adoption" as part of the RFC.  *Doc. 16* at 13.  The Court finds that the ALJ properly

14

considered Dr. Merta's opinion and crafted an RFC accordingly.

Plaintiff asserts that "[t]his Court must review Dr. Merta's opinion and determine for itself whether an opinion of periods of 'marked' limits to Plaintiff's cognitive functioning or 'likely to isolate herself' during periods of exacerbated depression and pain indicates some period, however intermittent, during which Plaintiff be off task or isolate from others." *Doc. 25* at 5. Such a review is exactly what the Court *cannot* do. *See Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) ("[Plaintiff's] contentions amount to an argument that this court should reweigh the evidence, which we cannot do."). The only issues for the court to consider are whether the ALJ applied the correct law and whether his determination was supported by substantial evidence. *See Jeri A. C. v. Kijakazi*, 2022 WL 3868150, at *5 (D. Kan. Aug. 30, 2022) ("It is not this court's nor the parties' place in substantial evidence review to decide the 'best' understanding of [the doctor's] opinion. Rather, it is the court's duty to determine whether the ALJ's understanding is supported by the evidence.").

Dr. Merta found that Plaintiff normally had satisfactory cognitive abilities, but at times of heightened pain or depression, she could have limitations with understanding, concentration, persistence, and social interaction. AR at 1183, 1185. The ALJ reasonably accounted for these limitations when he formulated Plaintiff's RFC: she was limited to mainly sedentary work with short standing periods; she was limited to detailed but not

15

complex instructions; she could have frequent interaction with coworkers and supervisors and only occasional interaction with the public. AR at 123. The Court finds that these accommodations reasonably account for the limitations discussed in Dr. Merta's opinion. Since the Court finds the RFC supported by reasonable evidence it "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084 (citations omitted).

The Court therefore finds that the ALJ appropriately followed all the required legal standards, and his findings are supported by substantial evidence. The Court will not reweigh the evidence before it and therefore finds that the decision of the Commissioner should be affirmed.

## VI. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion to Remand (*doc. 16*) and AFFIRMS the Commissioner's decision.

**IT IS SO ORDERED.**

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE
**Presiding by Consent**

16